IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FIROOZ DELJAVAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-01258-BP |
| | § | |
| GOODWILL INDUSTRIES OF FORT | § | |
| WORTH, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the First Amended Motion to Dismiss and Brief in Support (ECF No. 21) filed by Defendants Elizabeth Butler, Rosemary Cruz, and Terry Willet on January 14, 2021; Defendant Goodwill Industries of Fort Worth's Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted and Brief in Support (ECF No. 24) filed on January 20, 2021; Plaintiff's Replies and Briefs in Support (ECF Nos. 35, 36, 42, 43) filed on March 2, 4, and 31, 2021, respectively; and Defendants' Replies (ECF Nos. 44 and 45) filed on April 2, 2021.

After considering the pleadings and applicable legal authorities, the Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 21 and 24) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim under Title VII of the Civil Rights Act of 1964 ("Title VII") for failure to exhaust administrative remedies; **DISMISSES WITH PREJUDICE** his claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Fair Labor Standards Act ("FLSA"); and **DISMISSES WITHOUT PREJUDICE** Plaintiff's state law claims for retaliation under the Workers' Compensation Act, breach of contract, and fraud because the Court declines to exercise ancillary jurisdiction over these claims.

## I.      BACKGROUND

In this employment discrimination case, Firooz Deljavan ("Deljavan") sues his former employer, Goodwill Industries of Fort Worth ("Goodwill"), and Goodwill's Vice President of Human Resources, Elizabeth Butler ("Butler"), Vice President of Donated Goods/Retail, Rosemary Cruz ("Cruz"), and Retail Director, Terry Willet ("Willet"). ECF No. 18. The following facts come from the Amended Complaint, and the Court accepts them as true for purposes of considering the Defendants' Motions to Dismiss. *See Manguno v. Prudential Prop. & Case. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).

Deljavan began working for Goodwill at its Camp Bowie store in Fort Worth as a donation attendant on September 9, 2018. ECF No. 18 at 7. In January 2020, he was accused of offering a female coworker $1,000 in exchange for sex. *Id.* at 9. Deljavan denied the allegations and claimed that the female coworker only made them to "express her rage" at him because of the "mental pressure" she was under due to her abusive relationship. *Id.* Deljavan reported these accusations to his manager and was asked to complete an affidavit. *Id.* On January 22, 2020, Deljavan met with Willet, who was investigating the allegations. *Id.* Willet questioned why Deljavan was trying to help his coworker and how he planned on helping her get psychiatric treatment. *Id.* Deljavan told Willet that he had just come from his doctor's office and had asked them about different facilities that might be available to his coworker. *Id.* Deljavan claims that upon mentioning that he was at the doctors, Willet became more interested in why he was there than in investigating his coworker's complaint. *Id.* at 9-10. Deljavan states that he told Willet that he was receiving temporary medical treatment for a "locking finger." *Id.* at 35.

Deljavan met with Willet again, and Willet told him that he was closing the case and "[b]ury[ing] the [h]atchet." *Id.* at 10. Deljavan interpreted this as an enforceable oral agreement as

he had "an obligation not to discuss the case with any co-worker[s]." *Id.* On January 29, 2020, Willet informed Deljavan that his employment was terminated due to his sexual misconduct, which Deljavan claims "breached" their previous oral agreement. *Id.* at 10-12.

While Deljavan acknowledges that he was terminated for allegedly sexually harassing a female coworker, he claims that Willet used this as a "pretext" to terminate him because of his age and disability. *Id.* at 11, 13, 36. Deljavan asserts that the Defendants violated the ADEA, the ADA, Title VII, the Texas workers' compensation anti-retaliation provisions, and the FLSA, and breached an oral contract by terminating him. *Id.* 40-41, 47-49, 57, 88-89. Deljavan also alleges that Defendant Goodwill defrauded him. *Id.* at 41.

In their Motion to Dismiss, Butler, Cruz, and Willet assert that Deljavan's ADEA and ADA claims fail as a matter of law because the ADEA and ADA both preclude personal liability suits against individuals who are not the plaintiff's employer. ECF No. 21 at 4. Defendant Goodwill asserts that Deljavan's ADEA and ADA claims against it fail since he did not plead a valid claim of age or disability discrimination. ECF No. 24 at 6-11.

All of the Defendants further argue for dismissal of Deljavan's Title VII claims for failure to state a claim and exhaust administrative remedies. ECF Nos. 21 at 6 and 24 at 17-18. Specifically, the Defendants allege that despite his many references to Title VII throughout his Amended Complaint, Deljavan did not allege discrimination or retaliation on the basis of his race, color, religion, sex, or national origin as required to state a claim under Title VII. Furthermore, Deljavan did not allege any Title VII claims in his charge of discrimination. *Id.*

Defendants contend that the Court should dismiss Deljavan's workers' compensation retaliation claim because he made no factual allegations to prove any of the elements required to state such a claim. *Id.* at 7-8 and 20-21. Additionally, the Defendants assert that Deljavan has failed

to allege any facts to support his FLSA claims as he did not contend that he was required to perform any principal activities while he was made to stay late at work. *Id.* at 8-9 and 22-23.

The Defendants seek dismissal of Deljavan's breach of contract claims because he was an at-will employee, and the alleged "oral agreement" was not in writing as required by law. *Id.* at 9-10 and 23-24. Finally, Defendant Goodwill argues for dismissal of Deljavan's fraudulent concealment claim against it because he failed to plead any of the elements of a fraud claim and did not plead facts with particularity. ECF No. 24 at 19-20.

In response to Defendants Butler, Cruz, and Willet's Motion to Dismiss, Deljavan claims that this Court should follow the Seventh Circuit and allow his ADA, ADEA, and Title VII personal liability claims against the defendants despite them not being his employer. ECF No. 42 at 79. Deljavan also contends that his FLSA claim should not be dismissed because the Defendants "enforced the policy everyone must exit at the same time on the night shift and clock out if they finished their task," which Deljavan claims resulted in him working for free. *Id.* at 74. Deljavan also alleges for the first time that the Defendants violated their alleged fiduciary duties owed to him and violated the Volunteer Protection Act of 1997, the Uniform Prudent Management of Institutional Funds Act, and the Sarbanes-Oxley Act of 2002. *Id.* at 8-11.

In his response to Goodwill's Motion to Dismiss, Deljavan argues against dismissal of his ADA claims since Goodwill had a copy of his physical examination performed by a "Goodwill doctor," and therefore terminated him because it knew he was a qualified disabled person. *Id.* at 97. He contends that the Court should not dismiss his ADEA claims because Goodwill promoted younger employees to cashier positions instead of him, proving that Goodwill terminated him due to his age. *Id.* at 90. Deljavan also reasserts that Goodwill violated the FLSA by making him stay after his shift was over without paying him, so dismissal of that claim is not warranted. *Id.* at 105.

4

Deljavan argues that his fraud claim should not be dismissed because Goodwill made a false representation and intended for him to act in reliance on that false representation. ECF No. 42 at 62. Deljavan did not respond to Goodwill's Motion concerning his Title VII, breach of contract, and workers' compensation retaliation claims. *See* ECF No. 41.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Additionally, a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Randall D. Wolcott, M.D., P.A. v.*

*Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation and quotation marks omitted).

### B.   *Pro se* **pleading standards**

A *pro se* plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*

### C.   **Dismissal with or without prejudice**

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548–49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction").

Nonetheless, courts may appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged its best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Likewise, a court may dismiss an action with prejudice without affording plaintiff the chance to amend where the court invited the plaintiff to respond to the motion to dismiss, but he failed to do so. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). If the court "outline[s] in [its] opinion the deficiencies" of plaintiff's pleading and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2-*3 (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988)). Moreover, courts may dismiss an action with prejudice without permitting amendment if the defendant is entitled to absolute immunity because the "plaintiff will never have a claim against the defendant based on the particular facts alleged." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

        **D.**      **Supplemental jurisdiction standard**

When a suit contains federal law and state law claims, the district court has federal jurisdiction over the federal law claims and has discretion whether to exercise supplemental jurisdiction over the remaining state law claims. *Pennie v. Obama*, 255 F. Supp. 3d 648, 677 n.5 (N.D. Tex. 2017) (citing 28 U.S.C. § 1367). But, a district court may "decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction." *Alford v. State Parking Servs.*, No. 3:13-cv-4546-L, 2014 WL 6977639, at *6 (N.D. Tex. Dec. 10, 2014) (*see also* 28 U.S.C. § 1367(c)(3)).

**III.**    **ANALYSIS**

        **A.**      **The Court does not consider allegations raised in Deljavan's Responses.**

As noted above, in his response to Defendants Butler, Cruz, and Willet's Motion to Dismiss, Deljavan alleged for the first time that the Defendants violated their fiduciary duties owed

to him and violated the Volunteer Protection Act of 1997, the Uniform Prudent Management of Institutional Funds Act, and the Sarbanes-Oxley Act of 2002. ECF No. 42 at 8-11. The Court does not consider the additional facts Deljavan states in support of these new claims because he did not assert them in his Amended Complaint. *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 263 (5th Cir. 2008) ("[W]hen deciding, under Rule 12(b)(6), whether to dismiss for failure to state a claim, the court considers, of course, only the allegations in the complaint"); *Coach, Inc. v. Angela's Boutique*, No. H-10-1108, 2011 WL 2634776, at *2 (S.D. Tex. July 5, 2011) ("Allegations contained in a response to a motion to dismiss are not appropriately considered in a Rule 12(b)(6) motion, which evaluates the sufficiency of the complaint itself and does not consider allegations not contained in the pleadings." (citation omitted)).

### B. Deljavan did not state a claim for violation of the ADEA and ADA.

#### 1. *Butler, Cruz, and Willet are not liable under the ADEA and ADA because they were not Deljavan's employer.*

Deljavan alleges that Butler, Cruz, and Willet violated his rights under the ADEA and ADA by terminating him due to his age and disability. ECF No. 18 at 13. Specifically, he contends that Butler violated his rights by failing to assign a neutral investigator to his sexual harassment claim and did not conduct his investigation according to Goodwill's policies and procedures. He argues that Cruz refused to accept his voluntary resignation instead of terminating him based on sexual misconduct. He asserts that Willet engaged in an improper investigation of sexual misconduct that lead to his termination. *Id.* at 12, 40, 49-50.

Butler, Cruz, and Willet urge dismissal of Deljavan's claims under the ADEA and ADA because only a plaintiff's employer may be personally liable under the ADEA and ADA. ECF No. 21 at 4. Additionally, they contend that Deljavan's claim that the Defendants are personally liable under the economic reality test is misguided as the Fifth Circuit has not adopted that test in ADEA

or ADA cases, and even if it had, Deljavan has not alleged any facts to show that he meets the required factors. *Id.* at 4-5.

The ADEA makes it unlawful for an employer to discriminate against an individual based his or her age. 29 U.S.C. § 623(a). The ADEA defines "employer" as a person "engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year…." 29 U.S.C. § 630(b). "Employer" also includes "any agent of such a person…." *Id.*

The ADA prohibits employment discrimination against a qualified individual with a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). The Act also protects employees from retaliatory discharge. *See id.* § 12203(a). Therefore, the ADA prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter...." *Id.* The ADA definition of "employer" mirrors the ADEA's definition. *See id.* § 12111(5)(a).

Deljavan argues that the inclusion of the employer's agents in the definition of "employer" allows for claims against supervisory personnel, such as Butler, Cruz, and Willet, in their individual capacities. However, the Fifth Circuit has held that the ADEA provides no basis for individual liability for supervisory employees. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). Given the similarity in the definitions of "employer" under the ADEA and the ADA, this Court has held that "personal capacity suits are likewise prohibited under the ADA" against supervisors. *Shabazz v. Texas Youth Com'n*, 300 F. Supp. 2d 467, 476 (N.D. Tex. 2003); *Bailey v.*

*Dallas Cty. Sch.*, No. 3:16-cv-1642-M, 2016 WL 7368146, at * 4 n. 6 (N.D. Tex. Dec. 9, 2016), *rec. adopted*, No. 3:16-cv-1642-M, 2017 WL 57836 (N.D. Tex. Jan. 4, 2017).

Deljavan argues that despite this prohibition against personal liability for persons such as Butler, Cruz, and Willet, the economic reality test makes them personally liable. ECF No. 18 at 49. Courts use the economic reality test in FLSA cases to determine whether an employer/employee relationship exists. *See, e.g., Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010). In Title VII, ADEA, and ADA cases, the courts have adopted a hybrid version of the economic realities test that combines it with a common-law control test. *Schweitzer v. Advanced Telemktg. Corp.*, 104 F.3d 761, 764 (5th Cir. 1997) (applying the hybrid test to ADEA claims) (citing *Fields v. Hallsville Indep. Sch. Dist.,* 906 F.2d 1017 (5th Cir. 1990)); *Bloom v. Bexar Cnty.,* 130 F.3d 722, 726 (5th Cir. 1997) (applying the hybrid test in an ADA suit). Under the hybrid test, courts view the "right to control" as the most important consideration in determining whether an entity acted as the employer of the plaintiff. *Fields*, 906 F.2d at 1019. To determine whether an individual or entity is an employer, the court considers whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Mares v. Marsh*, 777 F.2d 1066, 1068 (5th Cir. 1985).

Deljavan makes conclusory statements that Butler, Cruz, and Willet are responsible under the economic reality test due to their high-level positions and longevity of working for Goodwill. He does not plead facts to show how any of them hired or fired employees, controlled the conditions of employment, determined the rate and method of payment, or maintained employment records. Simply being a highly paid or longstanding employee does not make a person an employer who may be personally liable under the AEDA or ADA. The Court concludes that neither Butler,

Cruz, nor Willet were Deljavan's employer as Deljavan has not shown that any of them had the right to exercise direct control over the terms of his employment. Therefore, Deljavan cannot recover against Butler, Cruz, and Willet under the AEDA or ADA.

2.      <em>Deljavan has failed to state a claim against Goodwill under the ADEA and ADA.</em>

Deljavan alleges that Goodwill violated his rights under the ADEA and the ADA because he was a 70-year-old disabled man when it fired him. ECF No. 18 at 36-41. He asserts that Goodwill used his alleged sexual harassment as a pretext to terminate him and replace him with younger, non-disabled workers. *Id.* Specially, he points to other younger employees who received promotions over him as evidence of age discrimination. *Id.* at 37. Goodwill responds that Deljavan did not plead a valid claim of disability discrimination, age discrimination, or retaliation under the ADEA or ADA. ECF No. 24 at 6-16.

To state a claim of disability discrimination under the ADA, Deljavan must show that at the time of his termination he: (1) was disabled, regarded as disabled, or had a record of having a disability; (2) was qualified for the job at issue; (3) experienced an adverse employment action based on the disability or perception of the disability; and (4) was replaced by or treated less favorably than a non-disabled employee. *E.E.O.C. v. Chevron*, 570 F.3d 606, 615 (5th Cir. 2009). Once the plaintiff proves each element, the burden shifts to the defendant to establish that a legitimate, non-discriminatory reason for the adverse employment action. *Id.* After the defendant fulfills that burden, the burden once again shifts back to the plaintiff to prove, by a preponderance of the evidence, that the legitimate, non-discriminatory reason offered by the defendant-employer is merely a pretext for discrimination. *Id.*

"The threshold requirement in an [ADA] case is to determine whether the plaintiff has a disability." *Waldrip v. General Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003). If the plaintiff cannot

11

establish an actual or perceive disability, he fails to state a claim under the ADA. *Id.* The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(1).

Deljavan claims that he is disabled because of a metal implant in his left arm and right wrist and a scar from open heart surgery on his chest, and because he is diabetic. ECF No. 18 at 31. Deljavan claims that Goodwill knew this because he assumed his medical test report was kept in a "confidential drawer" by the Goodwill's Human Resources department. *Id.* at 31-32. Deljavan also claims that he was seeking medical treatment for a "locking finger," but he does not clarify whether he consider this as one of his disabilities. *Id.* at 32.

To qualify as a disability under the ADA, an impairment must substantially limit a plaintiff's major life activity. Deljavan has not pleaded facts to show that he suffered from such a physical impairment. Deljavan's Amended Complaint does not provide any facts to indicate impairments that substantially impaired his ability to perform manual tasks, seeing, walking, standing, speaking, concentrating, or communicating. Seeking temporary medical treatment for his locking finger and needing help to lift heavy furniture are not enough to show that Deljavan was substantially limited in a major life activity, nor do metal plates in the body, a scar on his chest, or the mere fact that he has diabetes. Accordingly, Deljavan has not pleaded sufficient facts that, if proven, would establish that he was disabled within the meaning of the ADA.

Deljavan also contends that Goodwill terminated him due to his age. ECF No. 18 at 36. In support of this claim, he states that Goodwill hired cashiers younger than him who were not disabled. *Id.* Additionally, he claims that Goodwill promoted a younger, disabled co-worker over him, despite having a similar job performance. *Id.* at 37. Goodwill responds that Deljavan has not

pleaded that someone outside the protected class or a younger person replaced him. ECF No. 24 at 10-11. It also asserts that Deljavan has not pleaded other facts to show that he was discharged because of his age and not due to his sexual misconduct. *Id.*

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA's prohibitions against age discrimination in employment are subject to several exceptions set forth in 29 U.S.C. § 623(f). Under one of these exceptions, an employer can avoid liability under the ADEA if the adverse employment action is "based on reasonable factors other than age." *Id.* at § 623(f)(1). When a plaintiff states a claim of discrimination under the ADEA, he is required to allege the following prima facie elements: that he

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). However, to state a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff is not required to submit evidence of his discrimination. *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Nevertheless, while plaintiffs do not "have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [their] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

If a plaintiff's disparate treatment claim depends on circumstantial evidence, he will "ultimately have to show" that he can satisfy the framework established in *McDonnell Douglas*

13

*Corp. v. Green*, 411 U.S. 792, 802 (5th Cir. 2005). *Id.* In such cases, the Fifth Circuit has held that it can be "helpful to reference" that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim. *Id.* at 470-71. Under the *McDonnell* test, the burden shifts to the plaintiff to show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 309 (5th Cir. 2004) (citations and internal quotation marks omitted). If the plaintiff makes out his prima facie case, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). If the defendant can establish that the plaintiff was adversely treated due to a nondiscriminatory reason, the plaintiff may then attempt to prove discrimination by offering evidence that the defendants' stated reason is pretextual. *Id.* ("In a disparate treatment case ... a plaintiff must produce sufficient evidence to rebut a showing by the employer that there was a legitimate, non-discriminatory reason for [differentially treating] a particular employee.").

Here, Deljavan contends that Goodwill promoted younger employees over him and discriminated against him because of his "old face appearance." From these allegations, the Court must infer that Goodwill promoted other employees other than Deljavan because they wanted younger workers even if they were not as qualified as Deljavan. "If an inference is required for the evidence to be probative as to [Deljavan's] discriminatory animus in firing [Deljavan,] the evidence is circumstantial, not direct." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897-98 (5th Cir. 2002). Since Deljavan has only pleaded circumstantial evidence he will "ultimately have to show" that he can satisfy the framework established in *McDonnell*. *Chhim*, 836 F.3d at 470.

14

Deljavan has not pleaded sufficient facts to meet his burden and establish that his termination was because of his age. In his Amended Complaint, he did not state any facts to indicate that another employee who is similarly situated to him outside his protected class was treated differently than him in order to make a plausible claim that Goodwill terminated him because of his age. Instead, he attempts to allege that Goodwill perceived him as having an "old face appearance" and promoted younger employees to the cashier's position instead of him.

However, Deljavan's pleadings undercut this allegation. Deljavan attempts to support his claim by contending that Goodwill promoted younger employees, despite his being equally qualified and having the same work performance, but he is unable to establish that these younger employees received more favorable treatment. Deljavan stated that he was offered the same cashier position as a younger employee, but declined the offer because he believed it to be a demotion. *See* ECF No. 18 at 38. At most, Deljavan has made a conclusory allegation that Goodwill terminated him because of his age. However, the pleading standards set by Rule 8 require more than conclusory statements and even taking Deljavan's allegations as true and construing them liberally, the Court cannot "draw the reasonable inference that [Goodwill] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Stone v. Louisiana Dept. of Revenue*, 590 F. App'x 332, 339 (5th Cir. 2014). Accordingly, Deljavan has not met his burden of pleading that his termination was pretextual.

Deljavan contends that the Defendants retaliated against him for questioning Goodwill's policies and the actions of his supervisors. ECF No. 18 at 41-44. Goodwill responds that Deljavan did not exhaust his administrative remedies regarding these claims and failed to allege any facts to show that he is entitled to recover for retaliation under the ADEA or ADA. To sufficiently plead a claim of retaliation, Deljavan must show: (1) that he engaged in activity protected by the ADEA

or ADA; (2) that there was an adverse employment action; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir. 1992); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).

While Deljavan did check the box for retaliation on his charge of discrimination filed with the Equal Employment Opportunities Commission ("EEOC"), he states no facts to show how his various comments were an activity that either the ADEA or ADA protect, or how these comments adversely affected his employment. None of Deljavan's comments that allegedly motivated Willet to terminate him had anything to do with either his age or disability. He also does not provide any facts besides his conclusory statements that these comments led to his termination. As a result, Deljavan did not plead a retaliation claim under both the ADEA and the ADA.

## C.    Deljavan did not state a claim under Title VII.

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against a person "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiffs who allege employment discrimination under Title VII "must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Administrative exhaustion "occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue," *id.* at 379, or when he "files a timely charge with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996).

In his Amended Complaint, Deljavan claims that all of the Defendants violated "Title VII as codified in 42 U.S.C. § 1983" through disparate treatment, hostile work environment, and

retaliation. ECF No. 18 at 51-54. As Title VII is codified at 42 U.S.C § 2000e, *et seq.*, it is unclear if Deljavan intended to assert both a Title VII claim and a claim under 42 U.S.C. § 1983. Regardless of his intent, neither claim is viable. Because the Fourteenth Amendment protects liberty and property interests only against the invasion by the state, a plaintiff who brings a claim under § 1983 must also show that state action caused his injury. *Landry v. A–Able Bonding, Inc.,* 75 F.3d 200, 203 (5th Cir. 1996). Here, none of the Defendants are state actors. Accordingly, Deljavan cannot bring a claim against them under § 1983.

Additionally, nowhere in his Amended Complaint does Deljavan assert that the Defendants terminated or otherwise discriminated against him on the basis of his race, color, religion, sex, or national origin as required for a Title VII claim. Instead, Deljavan claims he was discriminated against "solely" because of his age, medical conditions, and physical disabilities. ECF No. 18 at 51-52. Deljavan claims the Defendants' hostility towards "injured and disabled older workers" created a hostile work environment and violated Title VII. *Id.* at 53.

However, even if Deljavan were correct in asserting that Title VII covers acts of discrimination based on age or disabilities, he has not exhausted his administrative remedies for such a claim. In his EEOC Charge of Discrimination, Deljavan only alleged that he was discriminated against in violation of the ADEA and the ADA. *Id.* at 64. Additionally, he did not check the boxes for race, color, sex, or national origin to even indicate his intent to allege violations under Title VII. *Id.* Nor did he plead facts from which the EEOC or Defendants would have been put on notice that he asserted a claim other than under the ADEA and the ADA. Accordingly, since Deljavan did not exhaust his administrative remedies by filing a Title VII discrimination charge with the EEOC or with a state or local agency, his Title VII claims are unexhausted and must be dismissed. *Goswami v. Unocal*, No. H-12-2953, 2013 WL 5520107, at *7 (S.D. Tex. Oct.

17

3, 2013) ("An employee's failure to include a claim in [his] EEOC charge prevents the employee from suing on that claim, unless what was in the charge would have led the EEOC to investigate and would have put the employer on notice that [the employee] would be pursuing that claim."). The Court dismisses without prejudice Title VII claims that were not administratively exhausted. *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 n. 5 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't,* 127 F.3d 470, 478 (5th Cir. 1997) ("[w]hen a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies."); *Story v. Gibson*, 896 F.3d 693, 698 n.2 (5th Cir. 2018); *Crawford v. Tex. Army Nat'l Guard,* 794 F.2d 1034, 1035, 1037 (5th Cir. 1986)).

### D. Deljavan did not allege a claim under the FLSA.

The FLSA requires employers to pay employees a minimum hourly rate for each hour worked and overtime compensation for hours worked over forty hours in a workweek. 29 U.S.C. §§ 206(a), 207(a). In 1947, Congress passed the Portal-to-Portal Act to clarify what "work" and "workweek" meant under the FLSA. 29 U.S.C. § 254(a); *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 32-33 (2014). The Portal-to-Portal Act exempted employers from liability for future claims based on two categories of work-related activities as follows:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). The Supreme Court has consistently interpreted "the term 'principal activity or activities' [to embrace] all activities which are an 'integral and indispensable part of the principal activities.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005) (quoting *Steiner v. Mitchell*,

350 U.S. 247, 252-253 (1956)). "An activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Busk*, 574 U.S. at 33. In determining whether an activity is integral, the court must ask whether the activity is "tied to the productive work that the employee is *employed to perform*." *Bridges*, 875 F.3d at 226 (internal quotations and citations omitted) (emphasis in original). If employees are required to arrive early to work, in which they are able to use their time as they wish, they are not required to be compensated under the FLSA as they are not performing principal activities. *Id.* at 227.

Deljavan claims that after the store was closed and he was off the clock, he was not allowed to leave until the night shift manager closed the books, and "[t]herefore, [was] forced to work for free." ECF No. 18 at 38, 42. Deljavan does not claim that he was instructed to perform any work activities during this time that would require him to be compensated under the FLSA. Merely being asked to stay until the manager could close the books is not a principal activity, as Deljavan does not indicate that he was not allowed to use that time as he wished, only that he was not allowed to leave the store. Since Deljavan did not plead any facts alleging that he was required to perform any principal activities while he was required to stay late, he fails to state a claim under the FLSA.

Additionally, as to Defendants Butler, Cruz, and Willet, Deljavan has not shown that they were his employers as required for liability under the FLSA.  *See* 29 U.S.C. § 206(a). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The designation of "employer" under the FLSA does not automatically include those who have supervisory responsibility or have been designated as a manger, but rather, to be an employer, an individual must "independently exercise control over the

work situation." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (holding corporation's president liable because "only he who could authorize compliance with the Fair Labor Standards Act"). This requires not only a sufficient level of control, but also a nexus to the protected rights at issue. *Id.* Courts generally have not held lower-level supervisors of other employees individually liable. *Rudy v. Consol. Rest. Companies, Inc.*, No. 3:08-cv-0904-L-BF, 2010 WL 3565418, at *5 (N.D. Tex. Aug. 18, 2010), *rec. adopted*, No. 3:08-cv-0904-L, 2010 WL 3565422 (N.D. Tex. Sept. 3, 2010) (citations omitted).

To determine whether an individual is an employer, the Fifth Circuit looks to the economic realities test. *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990). As noted above, Butler, Cruz, and Willet were not Deljavan's employer under the economic realities test since Deljavan has not shown that any of them had the right to exercise direct control over the terms of his employment. Therefore, Deljavan cannot recover against Butler, Cruz, and Willet under the FLSA for this additional, independent reason.

> **E.** **The Court declines to exercise supplemental jurisdiction over Deljavan's claims for retaliation for filing a workers' compensation claim, breach of contract, and fraud.**

Finally, Deljavan alleges that Defendants retaliated against him for filing a claim for workers compensation, breached its contract with him, and defrauded him. ECF No. 18 at 43, 46, 48, 50. Although the Court has federal question jurisdiction over his claims for violation of the ADEA, ADA, Title VII, and the FLSA, the Court has only supplemental jurisdiction over his remaining claims because the parties are not of diverse citizenship and no other ground of subject matter jurisdiction exists on the facts alleged. Deljavan's claims for workers compensation retaliation, breach of contract, and fraud do not raise any issue of federal law. Accordingly, the

Court declines to exercise supplemental jurisdiction over these claims and instead will dismiss them without prejudice. *Pennie*, 225 F. Supp. 3d at 677 n.5.

      **F.**      **The Court does not grant Deljavan leave to amend his Amended Complaint.**

Deljavan requests leave to amend his Amended Complaint in order to plead his best case. However, the Court has already provided Deljavan an opportunity to amend his complaint, and his Amended Complaint is still deficient. Additionally, Deljavan does not indicate how he would cure his complaint if the Court gave him another chance to amend his complaint. *See Benfield v. Magee*, 945 F.3d 333, 339-40 (5th Cir. 2019). Under these circumstances, the Court does not grant Deljavan leave to amend his Amended Complaint because it is clear that he has pleaded his best, though legally deficient, case.

## IV.    CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 21 and 24) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Title VII claim for failure to exhaust his administrative remedies; **DISMISSES WITH PREJUDICE** Plaintiff's claims under the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act, and the Fair Labor Standards Act for failure to state a claim; and **DISMISSES WITHOUT PREJUDICE** Plaintiff's state law claims for retaliation under the Workers' Compensation Act, breach of contract, and fraud because the Court declines to exercise supplemental jurisdiction over these claims.

It is so **ORDERED** on May 28, 2021.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE